PETER S. SCOTT, respondent,

*v.*

JOHN E. CURTIS et al., appellants.

[Decided May 17th, 1926.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Buchanan, who rendered the following opinion:

"Complainant is entitled to foreclosure decree for the $40,000 principal, with interest, from March 18th, 1924.

"I am entirely satisfied that the defense of bonus or usury has not been sustained, and I am of the opinion, also, that the defense of estoppel has not been sustained. It seems to me clear, from the testimony of the defendant Curtis, that there was an agreement made between Scott and Curtis on October 10th, whereby Scott agreed that Curtis might have until November 10th within which to pay the accrued interest, which accrued on September 18th, without entitling the complainant to the acceleration of the principal; in other words, that he would waive that provision if the six months' interest was paid on or before November 10th, plus interest on that installment of interest, and that Curtis agreed to do that. That is the defendant's own testimony. It is not denied by Scott.

"As to the defendant Loizeaux Lumber Company, Mr. Loizeaux, the .president of that company, testified that he was told of that contract by Curtis on November 7th or November 6th, and that he had in his pocket moneys, in addition to the $1,200 of which he made tender, sufficient to pay interest on that installment of interest, but that neither of them made any tender of further interest or made any mention of it. So far as the testimony before me is concerned, no mention of that was made on either side at that conver-

sation of November 7th. I am unable to spell out of the conversation that has been testified to as having occurred on that day, and repudiation of that bargain. The testimony is that request was made of Scott for an extension; that Curtis had no money and was hard up, and that the extension was denied. There is no term of the extension mentioned; nothing in that conversation to indicate that the extension was to be from November 7th; nothing to indicate that the thirty-day extension, which had previously been agreed upon, to November 10th, was not still valid and binding, and the tender was made of the $1,200, but not of the further amount agreed to be paid for the thirty-day extension of time for payment of the interest, and that further amount was never paid and never tendered thereafter. If defendant on November 7th, or at any time before November 11th, had tendered, in addition to the $1,200 mortgage interest, the interest on that $1,200, from September 18th, in accordance with the agreement, complainant would have no right to maintain this suit. But that was not done, so that it seems to me that from and after November 10th this complainant had the right again to insist, or thereafter insist, upon the strict terms of the bargain made in the mortgage, and that he did do.

"There is a conflict of testimony as to just what was said on November 7th. Mr. Loizeaux testified that $2,500 was demanded by Scott as a consideration for letting the principal remain for four and a half years more. He said that he replied that he never had paid blood money and would not do it now. That conversation is denied by Scott. Curtis, who was present at the conversation, does not say anything about the blood money conversation, although my recollection is that he did say Scott demanded $2,500 as a condition for letting the money remain. I cannot see, however, that that estops Scott from insisting upon the terms of the mortgage. If he had made that demand it would not have been an equitable demand to make; it would not have been a decent thing to do, but there was nothing to compel him to forego his right to the principal from and after Novem-

ber 10th, if the bargain, which had been made on October 10th, was not complied with.

"The only thing which I had some doubt about was the matter of costs. Now, apparently, from the correspondence and from his own testimony, Scott was only moved to require the payment of this principal because of the fact that he had made some statement to the Pitman Trust Company, that he would have this $40,000 to invest, and told them that he would accept these mortgages and loan the money on these mortgages, and his demand for $1,200, according to his testimony, was because that amount was stated to him by the Pitman Trust Company as being the amount to which they were entitled under the circumstances. Scott says in his letter to Curtis that the only way to have an extension of time was by a legal commission of three per cent., amounting to $1,200. I don't know where he got the idea that that was a legal commission. He certainly did not take any trouble to investigate the liability he was under, nor did he take the trouble to explain to Curtis or Loizeaux why it was that he was asking this $1,200. He laid himself open thereby to the suspicion which has been mentioned, and which, naturally, was aroused, that he was asking this $1,200 for himself. For that he has only himself to blame. The proofs do not satisfy me that he was asking that for himself, but he laid himself open to that attack, and if he had been courteous enough to explain why it was he was asking this money, why it was he had to take this up—the situation he found himself in—it might well have been that the matter could have been arranged; Curtis or Loizeaux might have explained to him that it was not necessary for him to pay three per cent. commission, or that it would not have been necessary for the borrower to pay that commission. In view of that fact they might have arranged to pay something which might have satisfied everybody. But he chose to keep that to himself and not disclose it to them.

"I am inclined to think, under the circumstances, I will not award costs other than the costs as upon an uncontested foreclosure suit.

"Mr. Lane—Your honor has mentioned November 7th— a conference. I think it might be looked upon that your honor was speaking of a talk as to the extension. There was no talk of extension on November 7th.

"The Court—No; I did not mean extension as to interest; there was nothing said about that on November 7th. The request on that day was for renewal or extension of the principal, an 'extension to fulfill the unexpired portion of the original term of the mortgage,' was what Mr. Loizeaux called it, I think."

*Mr. Charles A. Otto,* for the respondent.

*Mr. Merritt Lane,* for the appellants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Buchanan.

*For reversal*—None.